IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **STEVEN PARKER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:12-CV-03560-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Steven Parker ("Mr. Parker") brings this action under 42 U.S.C. § 405(g) (2006), Section 205(g) of the Social Security Act.  He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for application for disability, disability

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[2] Mr. Parker has timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Parker was forty-one years old at the time of his alleged amended onset date, forty-two years old on December 31, 2009, the date he was last insured for DIB, and forty-three years old on the date of the decision of the Administrative Law Judge ("ALJ"). (Tr. 22, 33). He claimed he became disabled on December 31, 2004 (Tr. 25), with an alleged amended onset date of December 5, 2008. (*Id.*) His last period of work ended on December 5, 2008. (Tr. 27).

On August 8, 2008, Mr. Parker protectively filed a Title II application for a period of disability and DIB, and also protectively filed a Title XVI application for SSI. (Tr. 25). In both applications, he alleged disability beginning December 31, 2004. On January 5, 2009, these claims were initially denied. (*Id.*). On February 10, 2009, Mr. Parker filed a written request for hearing. (*Id.*). He appeared and testified at a hearing

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

held on May 4, 2010. (*Id.*) Julia A. Russell, Ph.D., vocational expert ("VE"), also appeared at the hearing. (*Id.*) Mr. Parker's representative, Don Bevill, Esq., moved, on Mr. Parker's behalf, to amend the alleged onset date to December 5, 2008, and the ALJ granted this motion. (*Id.*).

On January 14, 2011, the ALJ issued his opinion concluding Mr. Parker was not disabled and denying him benefits. (Tr. 22). Mr. Parker timely petitioned the Appeals Council to review the decision. (Tr. B4B). On August 17, 2012, the Appeals Council issued a denial of review on his claim. (Tr. 1-7).

Mr. Parker filed a Complaint with this court on October 10, 2012, seeking review of the Commissioner's determination. (Doc. 1). On January 22, 2013, the Commissioner filed an Answer. (Doc. 6). On April 8, 2013, Mr. Parker filed his brief. (Doc. 9). On May 7, 2013, the Commissioner filed her brief. (Doc. 10). With the parties having now fully briefed the matter, the court has carefully considered the record and affirms the Commissioner's decision.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). An ALJ may make this determination by posing hypothetical questions to a VE. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.2011); 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.* An ALJ may rely solely on the testimony of a VE in making this determination. *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir.1999), *cert. denied*, 120 S. Ct. 1723 (2000). For the testimony of a VE to constitute substantial evidence, the ALJ must pose a hypothetical that comprises all of the claimant's impairments that significantly affect a claimant's ability to work. *Wilson v. Barnhart,* 284 F.3d at 1227 (citing *Jones v. Apfel*, 190 F.3d at 1229). Once the Commissioner has done so, the claimant has the burden to show that he cannot perform the identified work. *Jones v. Apfel*, 190 F.3d at 1228 ("If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled."). If the claimant does not do so, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g).

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Mr. Parker met the insured status requirements of the Social Security Act through December 31, 2009. (Tr. 27). The ALJ then found that Mr. Parker had not engaged in substantial gainful activity since December 5, 2008, the alleged amended onset date of his disability. (*Id.*). He further concluded that Mr. Parker had the following severe impairments: chronic episodic inflamed varicose veins, panic disorder, chronic obstructive pulmonary disease, bipolar I disorder, and mild hypertrophic facet arthritic changes of lumbar spine. (*Id.*). The ALJ then held that these medically determinable impairments, in combination, did not meet or medically equal one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations. (Tr. 29).

After considering the entire record, the ALJ found that Mr. Parker had the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 31). He further found that Mr. Parker "has moderate restriction in the following areas: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting; and responding to customary work pressures. He would miss no more than one and half days [sic] of work per month." (*Id.*).

The ALJ then found that Mr. Parker was unable to perform his past relevant work as a dump truck driver and a truck driver. (Tr. 33). He determined that Mr. Parker "has a limited education and is able to communicate in English." (*Id.*). He further found that transferability of job skills is not an issue in this case because Mr. Parker's past relevant work is unskilled. (Tr. 34).

The ALJ found Mr. Parker's ability to perform all or substantially all of the requirements of sedentary work was impeded by additional limitations. (*Id.*) Accordingly, the ALJ asked the VE whether jobs exist in the national economy for an individual with Mr. Parker's age, education, work experience, and residual functional capacity. (*Id.*). The VE testified that, given all of these factors, Mr. Parker would be able to perform the requirements of representative sedentary unskilled occupations such as assembler, tester, sorter, and sampler. (*Id.*). In his decision, the ALJ wrote, "[p]ursuant to SSR 00-4p, the [ALJ] accepts the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*). Based on the VE's testimony, the ALJ "conclud[d] that, considering [Mr. Parker's] age, education, work experience, and residual functional capacity, [Mr. Parker] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*). The ALJ therefore issued a finding of "not disabled." (Tr. 34, 35).

## ANALYSIS

### I. INTRODUCTION

The court may reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." Id. (citation omitted).

### II. GROUNDS RAISED IN APPEAL

In his brief, Mr. Parker urges this court to reverse the Commissioner's decision on three grounds: (1) Mr. Parker is illiterate and the ALJ neither explored the conflict between Mr. Parker's illiteracy and the reading requirements for the jobs identified by the VE, nor did he set out a reasonable explanation supporting his decision that Mr. Parker could perform such work; (2) the ALJ's hypothetical question was incomplete in that it failed to include Mr. Parker's severe breathing impairments; and (3) the ALJ's hypothetical questions were incomplete in that they did not mention any of the work

---

[5]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

restrictions resulting from that condition. For the reasons set out below, the court rejects each of these grounds.

> **A.     The Burden Is on Mr. Parker To Show that He Cannot Perform the Jobs Identified by the VE**
>
> Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is generally where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity. Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity. The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.

*Perdue v. Astrue*, 2012 WL 967629, *6 (N.D.Fla., 2012).

As stated above, at step three, the ALJ found that Mr. Parker's RFC was "sedentary work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional "moderate restriction in the following areas: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting; and responding to customary work pressures. He would miss no more than one and half days [sic] of work per month." (Tr. 31). Thus, the ALJ found that Mr. Parker had both exertional and nonexertional limitations on his ability to meet the demands of jobs and properly included those additional limitations in his RFC and in

his hypothetical questions to the VE.[6]

Mr. Parker argues that he could not perform the jobs identified by the VE because Mr. Parker was illiterate. The burden, however, is on Mr. Parker to prove that he can **not** do the jobs identified by the VE, based on his RFC, because a claimant who can make an adjustment to other work is not disabled. *See* 20 CFR §§ 404.1520(a)(4)(v) and (g)(1). Mr. Parker argues that, according to the DOT, the jobs identified by the VE all require that the claimant be literate, and that it therefore was

---

[6]**§ 220.135 Exertional and nonexertional limitations.**

(a) General. The claimant's impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit the claimant's ability to meet certain demands of jobs. These limitations may be exertional, nonexertional, or a combination of both. Limitations are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs.... Limitations or restrictions which affect the claimant's ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional....

***

(d) Combined exertional and nonexertional limitations. When the limitations and restrictions imposed by the claimant's impairment(s) and related symptoms, such as pain, affect the claimant's ability to meet both the strength and demands of jobs other than the strength demands, the Board considers that the claimant has a combination of exertional and nonexertional limitations or restrictions. If the claimant's impairment(s) and related symptoms, such as pain, affect the claimant's ability to meet both the strength and demands of jobs other than the strength demands, the Board will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that the claimant is disabled based upon the claimant's strength limitations; otherwise the rules provide a framework to guide the Board's decision.

20 CFR § 220.135

error for the ALJ to neither explore that conflict nor set out a reasonable explanation supporting his decision that Mr. Parker could perform such work. Even assuming that such a conflict exists, however, this argument fails because it puts upon the Commissioner the burden to prove that Mr. Parker <u>can</u> perform such work (that is, to prove that he is literate).

As pointed out by Mr. Parker, the ALJ acknowledged his testimony that Mr. Parker could read and write "only small words" (Tr. 32) and that the ALJ "did not discredit it." (Doc. 9, p. 11). However, the ALJ's inclusion of that testimony in his determination of Mr. Parker's residual functional capacity and his failure to list "illiteracy" as an additional limitation does not show that the ALJ was erroneous in the limitations he listed in that RFC determination or in his hypothetical questions to the VE. In fact, it is uncontroverted that Mr. Parker <u>can</u> read and write - he is just limited to "small words." Further, the VE was present for the entire hearing, and thus heard all of the testimony, including the testimony about Mr. Parker's limited ability to read.[7] Taken together with Mr. Parker's "limited" education, which the VE accurately

---

[7] Thus, in this case, a more detailed description of Mr. Parker's reading limitation did not need to be explicitly included in the question to the VE. *Cf. Brunson v. Astrue*, 850 F. Supp. 2d 1293 (M.D. Fla. 2011) ("Nor does the hypothetical implicitly account for Plaintiff's mental limitations **because there was no further description or reference to Plaintiff's mental abilities or limitations during the hearing**" (emphasis supplied).

summarized,[8] substantial evidence supports the ALJ's RFC (which did not include a limitation for illiteracy, as that term is defined in 20 CFR § 404.1564.)[9]  Thus, the

---

[8] [Question by ALJ to VE:] "Okay, do you have sufficient information about his education, in your opinion?"
[VE response:] "My understanding, from review of the record, is that he at least went into the ninth grade.  I'm not sure whether or not he completed it, but he has a history of Special Education."
[ALJ question:] "okay.  Any disagreement with what [VE] Dr. Russell said?"
[Mrs. Parker's response:] "No."
[Mr. Parker's response:] "No."
(Tr. 72).

[9] 20 CFR § 404.1564 is set out in its entirety below.

**20CFR § 404.1564 Your education as a vocational factor.**

(a) General. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

(b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:

ALJ's decision was not in error.

---

**(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.**

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

**(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.**

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

(5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

(6) Information about your education. We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

20 C. F. R. § 404.1564 (emphasis supplied).

## B.     The ALJ's Hypothetical Question Was Complete

Mr. Parker next alleges error because the ALJ did not include Mr. Parker's "severe breathing impairments" in the hypothetical questions to the VE and failed to include "some mention of the work restrictions resulting from that condition." (Doc. 9, p.15). The court agrees that the ALJ must pose a hypothetical that comprises all of the claimant's impairments <u>that significantly affect a claimant's ability to work</u>. *Wilson v. Barnhart,* 284 F.3d at 1227 (citing *Jones v. Apfel*, 190 F.3d at 1229).

The hypothetical questions to the VE included all of Mr. Parker's <u>significant work limitations</u>, as determined by the ALJ in his RFC. Additionally and appropriately, it included Mr. Parker's age, education, and past relevant work. Specifically, the ALJ told the VE to assume that: Mr. Parker at least went into the ninth grade, but had a history of Special Education; Mr. Parker's age; his past relevant work was as a dump truck driver and a truck driver; he would be able to lift occasionally ten pounds, five pounds frequently; sit two hours at a time, eight hours during an eight-hour day; walk two hours at a time and two hours during an eight-hour day; he would be able to do fingering and handling constantly bilaterally; a borderline range intellectually, 71 to 84; would have not more than moderate limitations in mental basic work activities of understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, dealing

with changes in a routine work setting and responding to customary work pressures; he would miss no more than one-and-a-half days of work per month; he has diminished hearing in the right ear, apparently little, if any, functional deficit; and would not be able to do his past work due to the exertional differences. (Tr. 72-73).

"The RFC assessment only considers functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96–8p. Nonexertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands. 20 C.F.R. § 404.1569a(c). For example, a claimant has a nonexertional limitation if he has "difficulty tolerating some physical feature(s) of certain work settings, e.g., [he] cannot tolerate dust or fumes." 20 C.F.R. § 404.1569a(c)(5). "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments <u>may or may not</u> significantly narrow the range of work a person can do." Social Security Ruling 83–14, 1983 WL 31254 at *1 (S.S.A.1983) (emphasis supplied). "If a claimant has nonexertional impairments that <u>significantly limit the ability to do basic work activities</u> ... the grid regulations do not apply." *Sryock v. Heckler*, 764 F.2d at 836 (internal citations omitted; emphasis added).

> Mr. Parker accurately points out that,
>
>> At the end of the hearing[,] the ALJ did mention [Mr. Parker's] diagnosis of COPD, asthma, and mild obstructive pulmonary impairment with particular involvement of the intermediate airway levels responsive to bronchodilator therapy. [Mrs. Parker] told the ALJ that [Mr. Parker] is still prescribed medicine for his COPD and alleged lung fibrosis. (T77). However, the ALJ did not include any of these conditions in any hypothetical question to the VE. (T74-76)."

(Doc. 9, p. 14). Although posed as an error in the hypothetical questions asked of the VE, in essence, Mr. Parker is saying that substantial evidence does not support the failure to include his pulmonary conditions or environmental limitations in the RFC.

This argument also fails. As to Mr. Parker's pulmonary issues, the ALJ specifically reviewed and addressed the medical opinions and records of treating physician Craig Young, M.D. (Tr. 27). He also, in assessing RFC, considered Mr. Parker's subjective allegations of his symptoms, and appropriately applied what is referred to as the "pain standard."[10] (Tr. 31-32). He found Mr. Parker's allegations

---

[10] Although often referred to as the "pain standard," the Eleventh Circuit standard used to assess subjective complaints is applicable to all subjective complaints, and not just to symptoms of pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). ("This court has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. <u>The standard also applies to complaints of subjective conditions other than pain</u>.")(internal citations omitted; emphasis supplied).

of severity of symptoms and limitations "not fully supported by the evidence of record." (Tr. 32).

> [Mr. Parker] alleged during the hearing that he becomes short of breath quickly. He stated he has used a nebulizer for the past four or five years.
>
> ***
>
> The evidence does not satisfy Social Security regulations 20 C.F.R. §§ 404.1529(c) and/or 416.929(c), SSR 96-7p, and the Eleventh Circuit law on the assessment of subjective complaints of pain and other symptoms, It does not establish an underlying medical condition, which is of such severity that it can reasonably be expected to give rise to the symptoms alleged by [Mr. Parker].
>
> In terms of the severity of symptoms and limitations as alleged by [Mr. Parker], the administrative law judge finds that they are not fully supported by the evidence of record....
>
> Additionally, the objective medical evidence fails to establish an impairment, which is disabling in nature. Dr. Young noted [Mr. Parker's] obstructive pulmonary impairment was only mild in nature and was responsive to bronchodilator therapy. (Exhibit B2F). Additionally, [Mr. Parker] testified that, although he had reduced his smoking from two and a half packs of cigarettes per day to a half a pack per day, he continued to smoke, which indicates this issue is not as severe as alleged."
>
> ***
>
> Clearly, [Mr. Parker's] impairments affect his ability to perform some of the physical requirements of work. However, there is no evidence that [his] impairments preclude him from performing work at the sedentary level of exertion, as this level of work activity would minimize the impact

---

Holt v. Sullivan  921 F.2d 1221, 1223 (C.A.11 (Fla.),1991)

> on this extremities and other body systems. Additionally, this exertional level appears consistent with [Mr. Parker's] current admitted abilities. [He] testified that he could stand and walk for approximately two hours during a normal workday.
>
> As for the opinion evidence, ... [t]he administrative law judge affords no weight to the State Agency's opinions related to [Mr. Parker's] physical abilities and limitations (Exhibit B6F). These opinions were not submitted from a medical professional and the combined impact of [Mr. Parker's] impairments would reasonably have greater exertional limitations.

(Tr. 32-33).

Thus, the ALJ correctly applied the "pain standard" to Mr. Parker's breathing problems and found evidence of an underlying medical condition (COPD) but also found neither objective medical evidence that confirms the severity of the alleged limitations arising from that condition nor that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged limitations.

Further, the ALJ was not required to include in his hypothetical questions to the VE impairments which he had correctly determined did not significantly impair Mr. Parker's ability to work. *McSwain v. Bowen*, 814 F.2d 617, 620 n. 1 (11th Cir. 1987); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986) (ALJ did not err in failing to include in hypothetical question limitations that did not significantly effect the level of work the claimant can do); *Smith v. Commissioner of Social Sec.*, 422 Fed.Appx. 855

(11th Cir. 2011) (ALJ was not required to consider additional impairments named by claimant in determining her eligibility for Social Security disability benefits, where the additional impairments did not affect claimant's ability to work, were not severe, and did not impact the severity of the combination of impairments considered by the ALJ.).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the ALJ applied proper legal standards in reaching his decision and that his decision was supported by substantial evidence. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this 23rd day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge